IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

ANTHONY D. HAYES, SR.,
a/k/a Anthony-D.:Hayes, Sr.,
Secured Party,

        Plaintiff,

vs.                                    No. 12-2665-JDT-dkv

SHELBY COUNTY TRUSTEE;
DAVID LENOIR; MLG&W DIVISION;
ROYAL FURNITURE COMPANY;
FIRST TENNESSEE BANK;
GE CAPITAL RETAIL BANK;
BRUCE B. HOPKINS; JERRY COLLINS;
NICOLE BEDFORD; SHELBY COUNTY
REGISTER OFFICE; TOM LEATHERWOOD;
and JOE REEVES,

        Defendants.

REPORT AND RECOMMENDATION FOR *SUA SPONTE* DISMISSAL

On July 27, 2012, the plaintiff, Anthony D. Hayes, Sr., a resident of Shelby County, Tennessee, filed a *pro se* "Complaint for Constitution Statutory Violations: Fraud, RICO, Right of Action Violation of Fair Credit Billing Act, 15 U.S.C. 1601, Breech [sic] of Fiduciary Responsibility, Fair Debt Collection Practices Act, 15 U.S.C. 1692 *et seq.*, Right of Discussion, Right of Relief" and "Estoppel," (D.E. 1), accompanied by a motion seeking leave to proceed *in forma pauperis*, (D.E. 2). On July 30, 2012, the court issued an order granting Hayes leave to proceed *in forma pauperis*,

(D.E. 3), and referred the case to the *pro se* staff attorney for screening pursuant to Local Rule 4.1. Thereafter, on January 7, 2013, Hayes filed an amended complaint that added defendants and claims to the original complaint. (Am. Compl., D.E. 4.) This case has now been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Order of Reference, D.E. 5.) For the reasons that follow, it is recommended that this case be dismissed for lack of subject-matter jurisdiction and/or for failure to state a claim.

## I. PROPOSED FINDINGS OF FACT

This is primarily an action to prohibit a tax sale of real property located at 4554 Tammy Cove, Memphis, Tennessee 38116, which was scheduled September 13, 2012, and to discharge certain debts.[1] Hayes named twelve defendants in the original complaint: (1) Shelby County Trustee; (2) David Lenoir (the Shelby County Trustee; (3) MLG&W Division; (4)Royal Furniture Company; (5) First Tennessee Bank; (6) GE Capital Retail Bank; (7) Bruce B. Hopkins; (8) Jerry Collins; (9) Nicole Bedford; (10) Shelby County Register Office; (11) Tom Leatherwood (the Shelby County Register); and (12) Joe Reeves. (Compl., D.E. 1 ¶¶ 6-16.) In his amended complaint,

---

[1] According to the records of the Registrar's Office, the property located at 6544 Tammy Cove, Memphis, Tennessee, was sold at a tax sale on January 9, 2013. (Clerk and Master's Tax Deed, Shelby County Register's No. 13028886.)

Hayes renames David Lenoir, Memphis Light Gas and Water Division, and Jerry Collins as defendants and adds three additional defendants: (1) City of Memphis; (2) Mayor A C Wharton; and (3) unnamed Agents of MLG&W.[2] (Am. Compl., D.E. 4 ¶¶ 1-2, 4-5.) In his amended complaint, Hayes also provides information concerning defendant GE Capital Retail Bank named in the original complaint. (*Id.* ¶ 3.)

The original complaint alleges that Hayes attempted to satisfy his debt owed to each defendant named in this lawsuit on various dates during the months of May through July of 2012, by electronic funds transfers ("EFT") sent by certified mail and that he received no credit for the EFT payments. (Compl., D.E. 1 ¶ 17). Specifically, Hayes contends that he sent an EFT payment in the amount of $14,048.45 to the Shelby County Trustee by certified mail on June 14, 2012, that the payment was received and accepted for discharge of the debt and that no debt therefore exists for the County Trustee but that Lenoir did not respond to a notification or certify a financial report request from Hayes. (*Id.* ¶¶ 18-19.) Hayes further states that prior to sending the EFT payment, the Shelby County Trustee filed a delinquent tax lawsuit in the

---

[2] Service of process cannot be made on unnamed or fictitious parties. The filing of a complaint against "John Doe" defendants does not toll the running of the statute of limitations against those parties. *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Bufalino v. Mich. Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968). Accordingly, it is recommended that the complaint be dismissed against the unnamed defendants "Agents" of MLG&W.

Chancery Court of Shelby County and did not properly serve Hayes. (*Id.* ¶ 20.) Thereafter, Hayes filed a counterclaim, and the Trustee did not respond, and the presiding chancellor refused to hear him on several occassions. Hayes states this constitutes a denial of due process. (*Id.*)

Hayes states that on May 29, 2012, June 23, 2012, and July 18, 2012, he made EFT payments in the amounts of $610.37, $815.20, and $1,110.08, respectively, by certified mail to MLG&W, that the payments were accepted for discharge of his debt, and that no debt exists. (*Id.*, ¶ 21.) He further states that MLG&W continued to send bills with conflicting balances and due dates or cut-off notices and that MLG&W did not respond to his "lawful notification mailed to MLG&W President, [Jerry Collins]." (*Id.*) He claims he filed a "proper Uniform Commercial Code UCC-3 State of Tennessee filing to satisfy Utilities." (*Id.* ¶ 22.) In his amended complaint, Hayes states MLG&W unlawfully disconnected his utility service at 4554 Tammy Cove, Memphis, Tennessee, on November 29, 2012, after having accepted EFT payments for nine months. (Am. Compl., D.E. 4 ¶ 8.)

Hayes alleges that on May 19, 2012, he made an EFT payment by certified mail in the amount of $874.60 to Royal Furniture Company for payment of his debt, that Royal Furniture accepted the payment, and that no debt exists. (Compl., D.E. 1 ¶ 23.) Royal Furniture did not return the EFT instrument and continued to send bills to

Hayes without responding to a notification he mailed to the Account Manager, Nicole Bedford. (*Id.*)

Hayes states that he made a payment by EFT instrument by certified mail in the amount of $572.11 to GE Capital Retail Bank, that the payment was accepted to discharge the debt, and that GE Capital continued to send bills to Hayes. (*Id.* ¶ 24).

Hayes states he sent a "Lawful Notification as a final step in due process" to Bruce H. Hopkins, President of First Tennessee Bank, for him to respond whether a payment pursuant to UCC-3-603 had been processed, but no response was received from Hopkins. (*Id.* ¶ 25.)

The complaint states that Hayes went to the Shelby County Register's Office to record a Uniform Commercial Code ("UCC") filing he received from the State of Tennessee. The documents had already been filed and recorded by the Secretary of State, and Hayes states he had paid the fees required. Hayes claims the receptionist told him that her supervisor had to review all UCC documents before they could be filed. She advised that the fee was $50 to file the documents as a miscellaneous record. Hayes asserts that Tom Leatherwood, Register, and Joe Reeves, Deputy Director, have shown prejudice and indifference by charging excessive rates and incorrectly filing his documents. (*Id.* ¶¶ 26-31.)

The complaint sets forth three separate counts consisting of the following causes of action: (1) Count I - violation of the

Uniform Commercial Code, violation of the Tennessee Consumer Protection Act of 1977, Tenn. Code Ann. §§ 47-18-101 *et. seq.*, violation of the Fair Credit Billing Act, 15 U.S.C. § 1601, violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et. seq.*, violation of 42 U.S.C. §§ 1983 *et. seq.* for Due Process, in particular violations of the First, Fourth, Fifth, Seventh and Ninth Amendments and the Tennessee State Constitution, (*Id.* ¶¶ 32-37); (2) Count Two - violation of the Fair Credit Billing Act, 15 U.S.C. § 1601, violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, violation of 42 U.S.C. § 1983 Due Process, and violation of Uniform Commercial Code, Act of Congress, (*Id.* ¶¶ 38-41); and (3) Count Three - breach of fiduciary responsibility, bank fraud in violation of 18 U.S.C. § 1344; conspiracy in violation of 18 U.S.C. § 1349; scheme or artifice to defraud in violation of 18 U.S.C. § 1346, and failure of corporate officers to certify financial reports in violation of 18 U.S.C. § 1350. (*Id.* ¶¶ 42-43.) Hayes also alleges violations of the RICO Act, 18 U.S.C. §§ 1961-1968.

Hayes seeks compensatory damages in the amount of $300,000 in treble damages from each defendant; punitive damages in the amount of $300,000 in treble damages from each defendant; exemplary damages for emotional distress and restitution for the money he unlawfully paid in the amount of $300,000 in treble damages; all attorneys fees; the right to amend his complaint as warranted; a

declaration that the actions of the defendants are
unconstitutional; enforcement of criminal charges against each
defendant; restitution as required by law; and for other relief
deemed proper by the court. (Compl., D.E. 1 at 15-16.)

Hayes's amended complaint is based on the conduct of the
defendants City of Memphis, MLGW Division, A.C. Wharton, Jerry
Collins and agents of MLGW in disconnecting his utilities during
cold weather months after he allegedly settled his debt with MLGW
with an EFT. Hayes alleges the actions of the defendants violate
the Clayton Act and Sherman Act in addition to all the statutory
violations alleged in his original complaint. He also alleges that
his utilities were disconnected in retaliation for filing previous
lawsuits.[3] (Am. Compl., D.E. 4 at 1,6.) He seeks severance of

---

[3]    Hayes is no stranger to federal litigation. Indeed,
Hayes has filed at least nine *pro se* federal lawsuits in the last
eight years (not including any state lawsuits). Hayes is a former
City of Memphis police officer. He filed a number of lawsuits
against the City of Memphis that culminated in a settlement on
January 20, 1999, pursuant to which in exchange for $643,000, Hayes
agreed to resign his position with the Memphis Police Department
("MPD") and release all claims related to his employment with MPD.
These lawsuits included *Hayes v. Herenton*, No. 95-2969-MlV (W.D.
Tenn.)(filed December 5, 1995); *Hayes v. City of Memphis*, No. 97-
2197- MlV (W.D. Tenn.)(filed Mar. 5, 1997); and *Hayes v. City of
Memphis*, No. 98-2319-MlV (W.D. Tenn.)(filed Apr. 8, 1998). After
his settlement, Hayes filed other lawsuits: *Hayes v. City of
Memphis*, No. 00-2560-MlA (W.D. Tenn.)(filed June 27, 2000); *Hayes
v. City of Memphis*, No. 01-2695-GA (W.D. Tenn.)(filed Aug. 30,
2001).
     Hayes currently has pending three other *pro se* federal
lawsuits in addition to this one: (1) *Hayes v. City of Memphis*,
Case No. 12-2253 -JDT-tmp (W.D. Tenn.)(filed Mar. 29, 2012)
(alleging workplace violence); (2) *Hayes v. U.S. Treasury, et al.*,
Case No. 12-2297 -JDT-cgc (W.D. Tenn.)(filed Apr. 16,

the monopoly of MLG&W to allow fair and reasonable rates from other utility companies; restoration of his utility services; and reimbursement in the amount of $6,000 per day for "damages of his flower/culinary herb seedling and fish fingerling, loss of food and enjoyment of life until service is reconnected." (*Id.* at 10.)

## II. PROPOSED CONCLUSIONS OF LAW

The gist of Hayes's present lawsuit is that he paid all bills due to the Shelby County Trustee, MLG&W, Royal Furniture, and GE Capital Retail Bank in full by tendering an electronic funds transfer instrument by certified mail to each of these entities, that the EFT instruments were accepted, and that, therefore, the underlying bills should be considered paid in full and discharged, and the defendants wrongfully seized his property, disconnected his utilities, failed to verify his EFT payments, or refused to allow him to file public documents relating to his payments.

A.   28 U.S.C. § 1915(e)(2) Screening

This report and recommendation will constitute the court's screening. The court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action —

(i)       is frivolous or malicious;

(ii)      fails to state a claim on which relief may be

_____

2012)(involving an IRS refund and allegations under the Fair Credit Reporting Act); and (3) *Hayes v. Wharton*, Case No. 11-2193-JDT-tmp (W.D. Tenn.)(filed Mar. 14, 2011)(employment discrimination).

granted; or

> (iii)     seeks monetary relief against a defendant who
> is immune from such relief.

28 U.S.C. § 1915(e)(2).

## B.    Standard of Review for Failure to State a Claim

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)(quoting *Iqbal*, 556 U.S. at 681)(alteration in original). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 Fed. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading")(internal quotation marks omitted); *Payne v. Sec'y of Treas.*, 73 Fed. App'x 836, 837 (6th Cir. 2003)(affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004)("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 Fed. App'x 506, 510 (6th Cir. 2011)("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

C.  Subject-Matter Jurisdiction

As an initial matter, the court must determine whether it has subject-matter jurisdiction over this action.  "Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *see also Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)("Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto."); *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982)("Federal courts are courts of limited jurisdiction.  The character of the controversies over which federal judicial authority may extend are delineated in Art. III, § 2, cl. 1. Jurisdiction of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction."); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 ("It is a fundamental precept that federal courts are courts of limited jurisdiction."). Federal courts are obliged to act *sua sponte* whenever a question about jurisdiction arises. *See, e.g., Ins. Corp. of Ireland, Ltd.*, 456 U.S. at 702 (stating that "a

court, including an appellate court, will raise lack of subject-matter jurisdiction on its own motion"); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 287 n.10 (1938); *Answers in Genesis, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009)("[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte.*"). Under Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

In his complaint, Hayes alleges the following bases for this court's jurisdiction:

> Jurisdiction is conferred on the Court pursuant to 28 U.S.C. Sections 1331, 1332, 1343, 1345, 1346, 1367, and venue is proper pursuant to Title VII of the Civil Rights Act of 1866, 1871, 1964, 1991 as amended, which provides remedy for violations pursuant to 41 U.S.C. Section(s) 1981, 1983, 1985, 1986, and 42 U.S.C. 1988, and the RICO Act Title 18 U.S.C. §§ 1961-1968, Title 18 U.S.C. §§ 241, 242, conspiracy and deprivation of right. Title 18 U.S.C. §§ 1344, 1349, 1346, 1350 and at 41 U.S.C. 1988 provides remedy [sic] these violations.

(Compl., D.E. 1 ¶ 4.) Although Hayes alleges over twenty statutory bases for jurisdiction and venue in this paragraph alone and cites over fifty federal statutory provisions in his complaint and amended complaint, the only possible basis for jurisdiction is federal question under 28 U.S.C. § 1331. The court will examine each of Hayes's asserted basis for jurisdiction, reserving federal question to the end.

12

1.  *Diversity Jurisdiction - 28 U.S.C. § 1332*

According to 28 U.S.C. § 1332, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Diversity of citizenship means that the action is between "citizens of different States." 28 U.S.C. § 1332(a). A federal court has jurisdiction under section 1332 only if there is "complete diversity between all plaintiffs and all defendants." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005)(citations omitted). "To establish diversity jurisdiction, one must plead the citizenship of the corporate and individual parties." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 792 n.20 (D.C. Cir. 1983); *see also Johnson v. New York*, 315 F. App'x 394, 395 (3d Cir. 2009)(per curiam); *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987)(complaint did not properly allege diversity jurisdiction); *Leys v. Lowe's Home Ctrs., Inc.*, 601 F. Supp. 2d 908, 912-13 (W.D. Mich. 2009)(complaint and notice of removal did not adequately establish diversity jurisdiction); *Ellis v. Kaye-Kibbey*, No. 1:07-cv-910, 2008 WL 2696891, at *2-3 (W.D. Mich. July 1, 2008)(dismissing complaint for failure adequately to allege facts establishing diversity of citizenship despite conclusory allegation that diversity exists); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1208 (3d ed. 2004).

Pursuant to 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

Diversity jurisdiction does not exist in this case. The complaint states Hayes "resides in Memphis, Tennessee, Shelby County, in the Republic of Tennessee, with his principal residence in care of 4554 Tammy Cove, Memphis, and Shelby County, Tennessee 38116." Although Hayes does not allege his citizenship, the court will treat Hayes as a citizen of Tennessee for purposes of determining jurisdiction. (*See* Compl., D.E. 1 ¶ 5.) The complaint alleges the place of principal offices of governmental agencies, businesses, and employees, but makes no allegations of citizenship as to any of the defendants. The complaint alleges that the defendants Shelby County Trustee's Office, Shelby County Register's Office, City of Memphis, Royal Furniture, First Tennessee Bank, Memphis Light Gas & Water Division, Mayor A C Wharton, David Lenoir, Tom Leatherwood, Jerry Collins, Bruce B. Hopkins, Joe Reeves, and Nicole Bedford all have principal offices located in Memphis, Tennessee. (Compl., D.E. 1 ¶¶ 6-16; Am. Compl., D.E. 4 ¶¶ 4-5.) The amended complaint alleges that defendant G.E. Capital Retail Bank has its principal office in Orlando, Florida, but neither the complaint nor the amended complaint contain allegations as to GE Capital's place of incorporation. (Am. Compl., D.E. 4 ¶ 3.) To the extent that the Shelby County Register's Office, the

Shelby County Trustee's Office, the City of Memphis, MLGW, the Mayor, David Lenoir, Tom Leatherwood, Bruce Hopkins, Joe Reeves, and Nicole Bedford are all citizens of Tennessee, complete diversity does not exist. Thus, Hayes has failed to plead sufficient facts to establish diversity jurisdiction, and the court lacks diversity jurisdiction.

2. *Jurisdiction under 28 U.S.C. § 1343*

Hayes also cites 28 U.S.C. § 1343, which confers federal jurisdiction over suits "[t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote." 28 U.S.C. § 1343(a)(4). The Supreme Court has rejected the position that § 1343(4), now § 1343(a)(4), "encompass[es] all federal statutory suits," *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979), or "allow[s] jurisdiction without respect to the amount in controversy for claims which in fact have nothing to do with 'civil rights,'" *id.* at 620.

> [T]he Congress that enacted § 1343(4) was primarily concerned with providing jurisdiction for actions dealing with the civil rights enumerated in 42 U.S.C. § 1985, and most notably the right to vote. While the words of [that] statute[] are not limited to the precise claims which motivated their passage, it is inappropriate to read the jurisdictional provisions to encompass new claims which fall well outside the common understanding of their terms.

*Id.* at 621. In *Chapman*, the Supreme Court held that the Social Security Act is not a statute providing for "civil rights" within

the meaning of § 1343(a)(4).  *Id.* at 623.

Although Hayes states in the complaint under the heading of "Jurisdiction and Venue" that "venue is proper . . . for violations pursuant to 42 U.S.C. Section(s) 1981, 1983, 1985, 1986, and 42 U.S.C. 1988," (D.E. 1 ¶ 4), and makes various references to these statutes in his complaint and amended complaint, he does not include any factual allegations supporting any claims for violation of any federal statute providing for the protection of civil rights.  Construed liberally, Hayes's complaint does not allege that the defendants were motivated by racial, or other class-based, discriminatory animus.  Indeed, Hayes never alleges that he is a member of a protected class.  The only allegation in the complaint related to class is that the County Register "files documents for WHITES and at a lesser charge." (Compl., D.E. 1 ¶ 31.)  This factual allegation is insufficient to state a claim against the Register under section 1985. Therefore, there is no jurisdiction under 28 U.S.C. § 1343(a)(4).

3.  *Jurisdiction under 28 U.S.C. § 1345*

Title 28 U.S.C. § 1345 only applies to civil cases where the United States is the plaintiff.  It states, "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."  28 U.S.C. § 1345.

16

Clearly, the United States is not the plaintiff in this lawsuit. Therefore, there is no jurisdiction under 28 U.S.C. § 1345.

4. *Jurisdiction under Title 28 U.S.C. § 1346*

Title 28 U.S.C. § 1346 applies to civil cases in which there is a claim against the United States. 28 U.S.C. § 1346(a)(2). Hayes has asserted no claims against the United States. Accordingly, there is no jurisdiction under 28 U.S.C. § 1346.

5. *Supplemental Jurisdiction under Title 28 U.S.C. § 1367*

Title 28 U.S.C. § 1367 does not establish jurisdiction of the court. It states in part:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution., Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).

6. *Federal-Question Jurisdiction under 28 U.S.C. § 1331*

Thus, the only possible basis for jurisdiction is under 28 U.S.C. § 1331, which provides for federal jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Despite numerous, scattered references to the United States Constitution, the complaint, however, does not allege a constitutional violation or that the defendants have violated any

treaty. The question then is whether the complaint or amended complaint asserts a viable claim arising under any of the numerous federal statutes referenced in the complaint. The court will examine the references in the complaint to various federal statutes to determine if the complaint sufficiently alleges a viable federal claim.

D.  <u>Failure to State a Claim under Federal Statutes</u>

  1. *Claims for Violation of the Electronic Funds Transfer Act, 15 U.S.C. §§ 1693 et seq.*

Even though Hayes never references the Electronic Funds Transfer Act by name or citation in his complaint, his complaint is based primarily on allegations concerning payment of debts with EFTs; however, his complaint fails to state a claim under the Electronic Funds Transfer Act. The Electronic Funds Transfer Act, 15 U.S.C. §§ 1693 *et seq.* ("EFTA"), was enacted as part of the comprehensive Consumer Credit Protection Act, 15 U.S.C. §§ 1601-1693r ("CCPA") and "protects individual consumer rights by 'provid[ing] a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems.'" *Clemmer v. Key Bank Nat'l Ass'n*, 539 F.3d 349, 351 (6th Cir. 2008)(citing 15 U.S.C. § 1693(b)). Because EFTA is a remedial statute, it is accorded "'a broad, liberal construction in favor of the consumer.'" *Id.* (quoting *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 163 F.3d 948, 950 (6th Cir. 1998)).

Under the EFTA, the term "electronic fund transfer" means any

18

transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, that is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone. 15 U.S.C. § 1693a(7). Electronic fund transfers covered by the Act have three components: 1) a transfer of funds, 2) initiation by electronic means, and 3) a debit or credit to a consumer account.

Here, Hayes alleges in his complaint that he initiated all the EFT transfers that are the subject of his complaint by certified mail, not by electronic means.[4] His attempted transactions are therefore clearly not covered by the EFTA. Accordingly, the complaint fails to state a claim under the EFTA, and EFTA is not a basis for federal-question jurisdiction.

    2.   *Claims for Violations of the Fair Credit Billing Act, 15 U.S.C. § 1601*

Hayes cites to the Fair Credit Billing Act by name or statutory reference (either as 15 U.S.C. § 1601 or as 15 U.S.C. § 1601 *et seq.*) seven times in his original complaint and eight more

---

[4] Hayes has not attached any of the purported EFTs to his complaint, and the court has no information regarding the EFTs other than the allegations in Hayes's complaint.

19

times in his amended complaint. The court assumes Hayes is trying to assert a claim under the Fair Credit Billing Act ("FCBA"), 15 U.S.C. §§ 1666-1666i. The FCBA and its implementing regulations (Regulation Z), 12 C.F.R. §§ 226.1 et seq., "set forth the procedures to be followed when a creditor receives notice from a consumer of an alleged billing error in the consumer's credit card account." *Burnstein v. Saks Fifth Avenue & Co.*, 208 F. Supp. 2d 765, 772 (E.D. Mich. 2002), *aff'd* 85 F. App'x 430 (6th Cir. 2003). Hayes does not identify in his complaint the provisions of the Fair Credit Billing Act that the defendants allegedly violated, but the court assumes that Hayes is proceeding under section 1666, the provision of the FCBA dealing with correction of billing errors.[5] Section 1666 imposes certain reporting requirements on creditors "who are defined as persons who regularly extend consumer credit payable in installments." *Phillips v. Cumberland Mountain Retreat, P.O.A.,* No. 2:06-0060, 2007 WL 540761, at *2 (M.D. Tenn. Feb. 15, 2007); 15 U.S.C. § 1602(f)(defining "creditor" as "a person who both (1) regularly extends, whether in connection with loans, sales of property or services or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt . . . is initially payable.").

---

[5] Section 1601, cited by Hayes, sets forth the congressional findings and declaration of purpose and is obviously not relevant.

In order for a creditor's duties to be triggered under the FCBA, "the consumer must provide the requisite written notice of a billing error." *Burnstein*, 208 F. Supp. 2d at 772. The written notice must be given within sixty days of receipt of the statement reflecting the error. (*Id.*)

Despite the fifteen references to the Fair Credit Billing Act in the complaint and amended complaint, there are no specific factual allegations in the complaint or amended complaint to support a finding that any of the defendants are creditors within the meaning of the FCBA. Even assuming that the defendants were subject to the FCBA, the complaint, as amended, does not state a viable claim under the FCBA. The complaint does not allege that there was a "billing error" in any of Hayes's bills, or that Hayes sent the requisite notice triggering any obligations on behalf of the defendants. *See* 15 U.S.C. § 1666(b). Absent such a notice, none of the statutory duties on the part of the defendants under the FCBA were triggered. *Conn-Burnstein v. Saks Fifth Avenue & Co.*, 85 F. App'x 430, 431 (6th Cir. 2003). Accordingly, the complaint fails to state a claim under the FCBA, and FCBA is not a basis for federal-question jurisdiction.

3. *Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et. seq.*

Hayes cites to the FDCPA by name or statute at least seven times in his original complaint and seven more times in his amended complaint. The fourteen or more references to the FDCPA in the

21

complaint and amended complaint, however, are insufficient to state a claim because the complaint fails to allege that any of the defendants are "debt collectors" within the meaning of the statute. (D.E. 1 ¶¶ 18, 22-23.) The purpose of the FDCPA is "to eliminate abusive debt collection practice by debt collectors." 15 U.S.C. § 1692. Under the FDCPA, a "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts . . . ." 15 U.S.C. § 1692a(6). Hayes fails to allege any facts demonstrating that the principal purpose of any of the defendants is collecting debts. *See Collins v. Mortg. Elec. Registration Sys., Inc.*, No. 3:11-cv-00264, 2012 WL 610191, at *7 (M.D. Tenn. Feb. 24, 2012)(dismissing FDCPA claim "[b]ecause the instant Defendants are not creditors"), *report and recommendation adopted*, 2012 WL 848041 (M.D. Tenn. Mar. 12, 2011). Accordingly, the complaint fails to state a claim under the FDCPA, and FDCPA is not a basis for federal-question jurisdiction.

4. *Claims for Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq.*

Hayes also refers in his complaint, in conclusory fashion, to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq*. There are five references to RICO in the complaint and three in the amended complaint as set forth below:

34. **RIGHT OF ACTION.** The right to bring suit; a legal right to maintain an action, growing out of a given

22

transaction or state of facts and based thereon. . . .
All Defendants violate . . . and the united states
criminal code for the RICO ACT Title 18 U.S.C. §§ 1961-
1968. . . .

(Compl., D.E. 1 ¶ 34.)

> 37.  Plaintiffs assert that this cause of action
arises as a result of the damages intentionally caused by
the defendants' willful and malicious conduct to conspire
and commit theft of property under FRAUD and DECEPTION,
in violation . . . of the RICO ACT Title 18 U.S.C. §§
1961-1968. . . .

(*Id.* ¶ 37; Am. Compl., D.E. 4 ¶ 16.)

> . . . violation of RICO ACT Title 18 U.S.C. §§ 1961-1968.
. . .

(Compl., D.E. 1 at 14.)

> 43.  The Defendants have violated the RICO ACT Title
18 U.S.C. §§ 1961-1968, Title 18 USC § 241,242 for
depriving plaintiff under color of law and conspiring to
commit deception, fraud to steal the Plaintiff's real
property through extortion by not properly applying funds
to a fraudulent Tax note, The Defendants are organized
corporations operating under color of law and conspired
with other governmental agency to commit theft and in
violation of Title 18 U.S.C. 1344 for Bank Fraud, Title
18 U.S.C 1349 for attempt and conspiracy, Title 18 U.S.C
1346 for scheme or artifice to defraud, and Title 18
U.S.C 1350 for failure of corporate officers to certify
financial reports.

(*Id.* At 15 ¶ 43.)[6]

> (d) all attorneys' fees incurred in prosecuting this
action pursuant to violation of the RICO ACT Title 18
U.S.C. §§ 1961-1968. . . .

(*Id.* at 15.)

> 13.  **RIGHT OF ACTION**.  The right to bring suit; a
legal right to maintain an action, growing out of a given

---

[6]    The complaint also contains a paragraph 43 on page 14.

transaction or state of facts and based thereon. . . .
The Defendants violate . . . the united states criminal
code for the RICO ACT Title 18 U.S.C. §§ 1961-1968. . .
.

(Am. Compl., D.E. 4 ¶ 13.)

18. . . . The Defendants have violated the RICO ACT
Title 18 U.S.C. §§ 1961-1968, Title 18 USC § 241,242 for
depriving plaintiff under color of law and conspiring to
defraud and invaded the Plaintiff's real property to
disconnect utility service.

(*Id.* ¶ 18.)

The complaint does not identify the provisions of RICO that

the defendants allegedly violated, but the court assumes that Hayes

is proceeding under section 1964(c), RICO's provision authorizing

civil suits for a violation of 18 U.S.C. § 1962.  It provides, in

pertinent part:

Any person injured in his business or property by reason
of a violation of section 1962 of this chapter may sue
therefor in any appropriate United States district court
. . . .

18 U.S.C. § 1964(c).  To establish a violation of section 1962,[7] a

plaintiff must show: "(1) that there were two or more predicate

offenses; (2) that an 'enterprise' existed; (3) that there was a

nexus between the pattern of racketeering activity and the

enterprise; and (4) that an injury to business or property occurred

_____

[7]    18 U.S.C. § 1962(c) provides:

It shall be unlawful for any person employed by or associated with
any enterprise engaged in, or the activities of which affect,
interstate or foreign commerce, to conduct or participate, directly
or indirectly, in the conduct of such enterprise's affairs through
a pattern of racketeering activity or collection of unlawful debt.

as a result of the above three factors." *VanDenBroeck v. CommonPoint Mortg. Co.*, 2010 F.3d 696, 699 (6th Cir. 2001). An "enterprise" can be proven by showing that a group of persons formed an ongoing organization; (2) that they functioned as a continuing unit; and (3) that the organization was separate from the pattern of racketeering activity in which it engaged. *Id*. RICO defines racketeering activity to include any act that is indictable under certain provisions of title 18 of the United States Code, including wire fraud, 18 U.S.C. § 1343, and mail fraud, 18 U.S.C. § 1341.

The complaint contains no factual allegations that support the elements of a civil RICO cause of action. There are no factual allegations of an enterprise, of two or more predicate offenses, or of an injury. Even though the real property located at 4554 Tammy Cove, Memphis, Tennessee, was sold at a tax sale on January 9, 2013, there are no allegations that Hayes has vacated the premises. Plus, Hayes has a right of equitable redemption for one year under Tennessee law.

Assuming Hayes's allegations of fraud and deception in paragraph 9 of his complaint are meant to be the underlying predicate offense, his complaint still fails to state a civil RICO cause of action. A civil RICO claim based on allegations of fraud must also comply with the particularity pleading requirement of Rule 9 of the Federal Rules of Civil Procedure. *Brown v. Cassens*

*Transp. Co.*, 546 F.3d 347, 356 n.4 (6th Cir. 2008); *Blount Fin.
Servs., Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 152-53 (6th
Cir. 1987); *Flores v. Emerich & Fike*, 416 F. Supp. 2d 885, 911
(E.D. Cal. 2006). Rule 9 requires that, "[i]n alleging fraud or
mistake, a party must state with particularity the circumstances
constituting fraud or mistake." "The Plaintiff[] must plead more
than a generalized grievance against a collective group of
Defendants in order to meet the requirements of FRCP 9(b)."
*Masterson v. Meade Cnty. Fiscal Court*, 489 F. Supp. 2d 740, 749
(W.D. Ky. 2007)(citing *United States ex rel. Bledsoe v. Cmty.
Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003)).

To comply with Rule 9(b), a complaint alleging a fraudulent
representation "must '(1) specify the statements that the plaintiff
contends were fraudulent, (2) identify the speaker, (3) state where
and when the statements were made, and (4) explain why the
statements were fraudulent.'" *Frank v. Dana Corp.*, 547 F.3d 564,
570 (6th Cir. 2008)(quoting *Gupta v. Terra Nitrogen Corp.*, 10 F.
Supp. 2d 879, 883 (N.D. Ohio 1998)). A plaintiff must, "[a]t a
minimum," "allege the time, place and contents of the
misrepresentations." *Id.* (citing *Bender v. Southland Corp.*, 749
F.2d 1205, 1216 (6th Cir. 1984)). "Generalized and conclusory
allegations that the Defendants' conduct was fraudulent do not
satisfy Rule 9(b)." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d
356, 361 (6th Cir. 2001). A plaintiff who asserts a claim based on

a failure to disclose must plead all the elements with particularity. 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1297, at 72-73, 101 (3d ed. 2004).

In his complaint, Hayes fails to identify any false statement allegedly made by any defendant, and much less the time and date of any false representation. Hayes's complaint merely alleges "fraud and deception" and includes no factual allegations. Accordingly, Hayes fails to plead fraud with the particularity required by Rule 9. Therefore, the various references to RICO are insufficient to state a civil RICO claim and therefore cannot form the basis for federal-question jurisdiction.

5. *Claims under 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988 (Compl., D.E. 1 ¶ 4)*

Hayes states in the complaint under the heading of "Jurisdiction and Venue" that "venue is proper . . . for violations pursuant to 42 U.S.C. Section(s) 1981, 1983, 1985, 1986, and 42 U.S.C. 1988." (D.E. 1 ¶ 4.) Hayes, however, does not support this formulaic recitation of these statutes with any underlying factual allegations as discussed below. Construed liberally, Hayes's complaint and amended complaint do not allege that the defendants were motivated by racial, or other class-based, discriminatory animus. Indeed, Hayes never alleges that he is a member of a protected class. The only possible allegation in the complaint related to race is that the County Register "files documents for WHITES and at a lesser charge." (Compl., D.E. 1 at ¶ 31.) This

27

factual allegation, standing alone, is insufficient to state a claim against the Register under the Civil Rights Act.

### a.  *Section 1981*

This section proscribes discrimination against any race and deals with protection of certain civil rights, including the right to make and enforce contracts, to sue, and to give evidence.  Hayes does not set forth any factual allegations in his complaint of discrimination on the basis of race in the making or enforcing of contracts, or his right to sue, or his right to give evidence.

### b.  *Section 1983*

In order "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1244 (6th Cir. 1989)(quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).  Several of the defendants named in the complaint - Royal Furniture, First Tennessee Bank, and GE Capital Retail Bank - are private companies and corporations.  In general, private companies and corporations do not act under color of state law.  *See Rendell-Baker v. Kohn*, 457 U.S. 830, 840-42 (1982)(holding that private school's decisions not attributable to state despite extensive state regulation of school); *Blum v. Yaretsky*, 457 U.S. 991, 1008-12 (1982)(holding that nursing home not a state actor despite extensive state

regulation of the industry); *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 358-59 (1974)(holding that heavily regulated electric company's decision is not a state action); *Adams v. Vandemark*, 855 F.2d 312, 317 (6th Cir. 1988)(holding private corporation not a state actor despite being subject to state regulation); *Hayes v. Allstate Ins. Co.*, 95 F. Supp. 2d 832, 836 (W.D. Tenn. 2000)(citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999))(holding that action of private, state-regulated insurance company not under color of state law). There are no factual allegations whatsoever in the complaint that reasonably suggest that these defendants engaged in conduct that could be construed as "state action." Accordingly, it is recommended that any claim under 42 U.S.C. § 1983 against Royal Furniture, First Tennessee Bank, and GE Capital Retail Bank be dismissed for failure to state a claim.

When a section 1983 claim is made against a municipality, the court must analyze two distinct issues: (1) whether plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The Court will address the issues in reverse order.

A governmental entity such as Shelby County Register's office "cannot be held liable *solely* because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983

on a *respondeat superior* theory." *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978)(emphasis in original); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988)(quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-480 (1986))(emphasis in original).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Co., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "Where a government 'custom has not received formal approval through the body's official decisionmaking channels,' such a custom may still be the subject of a § 1983 suit." *Alkire*, 330 F.3d at 815 (quoting *Monell*, 436 U.S. at 690-91). The policy or

custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Co. v. Dodson*, 454 U.S. 312, 326 (1981)(citation omitted)).

In the instant case, Hayes has not alleged that the governmental entities acted pursuant to a municipal policy or custom in causing him a deprivation of a constitutional right. Consequently, the complaint fails to establish a basis for liability against any governmental entity such as the Shelby County Register or Trustee. It is therefore recommended that any claim under 42 U.S.C. § 1983 be dismissed against all defendants for failure to state a claim.

c. *Section 1985*

The complaint also does not assert a valid claim against any defendant under 42 U.S.C. § 1985, which prohibits conspiracies to deprive persons of certain civil rights on account of their membership in a protected class. Although the complaint does not specify which of the three subsections of section 1985 is at issue, the plaintiff presumably is relying on 42 U.S.C. § 1985(3), which prohibits conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws."

> [I]n order to state a cause of action under § 1985, the
> plaintiff must allege that the defendants (1) conspired

31

together, (2) for the purpose of depriving, directly or
indirectly, a person or class of persons of the equal
protection of the laws, (3) and committed an act in
furtherance of the conspiracy, (4) which caused injury to
person or property, or a deprivation of any right or
privilege of a citizen of the United States, and (5) and
that the conspiracy was motivated by racial, or other
class-based, invidiously discriminatory animus.

*Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999); *see also*

*Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d

807, 832 (6th Cir. 2007). Construed liberally, Hayes's complaint

and amended complaint do not allege that the defendants were

motivated by racial, or other class-based, discriminatory animus.

Indeed, Hayes never alleges that he is a member of a protected

class. The only allegation in the complaint related to class is

that the County Register "files documents for WHITES and at a

lesser charge." (Compl., D.E. 1 ¶ 31.) This factual allegation is

insufficient to state a claim against the Register under section

1985. Accordingly, it is recommended that any claim under 42

U.S.C. § 1985 be dismissed against all the defendants for failure

to state a claim.

d. *Section 1986*

Because Hayes has no viable claim under 42 U.S.C. § 1985, he

also has no claim under 42 U.S.C. § 1986. "Section 1986

establishes a cause of action against anyone, who has knowledge of

a conspiracy under § 1985, and having power to prevent or aid in

preventing the commission of the same, neglects or refuses so to

do." *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 314 (6th

Cir. 2005)(internal quotation marks omitted). Because the complaint does not state a claim under section 1985, it necessarily follows that there can be no liability under section 1986. *Id.* at 315; *Bass*, 167 F.3d at 1051 n.5. Accordingly, it is recommended that any claim under 42 U.S.C. § 1986 be dismissed for failure to state a claim.

  e. *Section 1988*

  The other federal statute cited by the plaintiff, 42 U.S.C. § 1988, does not itself provide a cause of action. *Moor v. Alameda Cnty.*, 411 U.S. 693, 710 (1973); *Henderson v. Reyda*, 193 F. App'x 392, 397 (6th Cir. 2006); *Vaughan v. City of Shaker Heights*, No. 1:10-CV-0609, 2011 WL 5966808, at *1 n.2 (N.D. Ohio Aug. 30, 2011), *report and recommendation adopted*, 2011 WL 5966732 (N.D. Ohio Nov. 28, 2011); *Cortis v. City of Coleman*, No. 10-13261-BC, 2011 WL 1518901, at *6 (E.D. Mich. Apr. 20, 2011). Accordingly, it is recommended that any claim under 42 U.S.C. § 1988 be dismissed against all the defendants for failure to state a claim.

  6. <u>Violations of Criminal Statutes</u>

  In his complaint, Hayes states:

> This action also violates . . . Title 18 U.S.C. § 241,242 [sic] conspiracy and deprivation of right. . . . Criminal charges [should] be applied on the defendants; in violation of Title 18 U.S.C. § 1344 for Bank Fraud, Title 18 U.S.C. § 1349 for attempt and conspiracy, Title 18 U.S.C. § 1346 for scheme or artifice to defraud, and Title 18 U.S.C. § 1350 for failure to corporate officers to certify financial reports.

(Compl., D.E. 1 ¶ 3.) This is a civil action. Absent a private

right of action, a plaintiff cannot recover civilly for violation of a criminal statute. *Collins*, 2012 WL 610191, at *7 (dismissing plaintiff's claims for criminal forgery and criminal grading of theft offenses in civil action), *report and recommendation adopted*, 2012 WL 848041 (M.D. Tenn. Mar. 12, 2011). In addition, an individual cannot file criminal charges. Therefore, it is recommended that Hayes's claims for violations of these criminal statutes be dismissed for failure to state a claim.

7. *Sherman and Clayton Act Antitrust Claims*

Hayes's amended complaint purports to raise claims, presumably against MLGW and the City of Memphis, for violation of the Sherman Act and the Clayton Anti Trust Act "by having a monopoly utility service which violates antitrust laws forcing customers to accepts its high utility rates and unjust enrichment of billing. . . ." (D.E. 4 ¶ 1.)

These antitrust claims are barred by, *inter alia*, the judicially-created "state action doctrine." The "state action doctrine," as it is called, provides that antitrust law does not apply to states acting as sovereigns. *Jackson, Tenn. Hosp. Co., LLC v. W. Tenn. Healthcare*, Inc., 414 F.3d 608, 611 (6th Cir. 2005)(citing *Parker v. Brown*, 317 U.S. 341 (1943)). This doctrine, however, operates to shield political subdivisions of states from liability only when they act pursuant to a "clearly expressed state policy." *Id.* at 611-12 (citing *Town of Hallie v. City of Eau*

*Claire*, 471 U.S. 34, 40 (1985)). "The state legislature need not explicitly authorize anticompetitive conduct, as long as anticompetitive effect would logically result from the authority granted by the state." *Id.* at 612 (citing *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 372-73 (1991); *Hallie*, 471 U.S. at 41-42)). The Sixth Circuit applied these principles in *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527 (6th Cir. 2002), to hold that Michigan law, by empowering prisons to grant public contracts for the provision of telephone services, implicitly authorized anticompetitive conduct because such conduct was a logical result of the broad grant of authority.

The Tennessee General Assembly created and established MLGW in 1939 in chapter 381 of the Tennessee Private Acts of 1939 ("Private Act"). Section 1 of the Private Act amends the Charter of the City of Memphis and provides:

> any municipal utility system or systems heretofore or hereafter acquired by the City of Memphis for the manufacture, production, distribution, or sale of electricity, natural or artificial gas, or water, and the properties, agencies and facilities used for any such purpose or purposes, shall be under the jurisdiction, control and management of Memphis, Light, Gas and Water Division to be constituted and conducted as hereinafter set forth.

Tenn. Priv. Acts, 1939, ch. 381, § 1. The General Assembly granted to MLGW the power to

> construct, purchase, improve, operate and maintain, within the corporate limits of the City of Memphis or elsewhere within the limits of Shelby County, an electric plant or system . . . for the purpose of furnishing

35

> electric power and energy for lighting, heating, power or
> any other purpose for which electric power or energy can
> be used . . . .

*Id.* § 3. In sections 4 and 5 of the Private Act, the General Assembly granted similar authority to MLGW with regard to gas and water services. *Id.* §§ 4-5. Here, the state did more than just grant municipalities the authority to engage in conduct from which anticompetition would logically result, as was the case in *Michigan Paytel*, but in fact the state of Tennessee cut out the middle man and itself engaged in the anticompetitive conduct by expressly creating MLGW and enabling it to serve as the exclusive utilities provider for Shelby County. As such, there can be no doubt as to the existence of a "clearly expressed state policy" pursuant to which MLGW operates and is thereby shielded from liability under the state action doctrine as to any claims arising under federal antitrust law. Accordingly, even accepting the allegations in the amended complaint as true, this court concludes that Hayes has not pled any plausible entitlement to relief under either the Clayton Act or the Sherman Act.

In sum, Hayes has failed to state in his complaint or amended complaint any viable claim arising under any federal law, and therefore the court lacks subject-matter jurisdiction under 28 U.S.C. § 1331. Assuming the court has jurisdiction under 28 U.S.C. § 1331, Hayes has failed to state a claim for which relief can be

granted under any of the federal statutes referenced in his complaint or amended complaint.

E.    The Remaining State-Law Claims

Hayes purports to assert claims under the Uniform Commercial Code, the Tennessee Consumer Protection Act of 1977, Tenn. Code Ann. §§ 47-18-101 *et. seq*.(Compl., D.E. 1 ¶¶ 31-37); and for fraud.

As discussed above, the court has determined that every federal claim asserted by Hayes should be dismissed for failure to state a claim and/or lack of federal subject-matter jurisdiction. Without a basis for federal jurisdiction, the court should not exercise supplemental jurisdiction over any state-law claims brought by Hayes. *See* 28 U.S.C. § 1367(c)(3)("The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."). Accordingly, it is recommended that any remaining state-law claims be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

### III.   RECOMMENDATION

For the foregoing reasons, it is recommended that the complaint be dismissed *sua sponte* for lack of subject-matter jurisdiction, pursuant to Rules 12(b)(1) and (h)(3) of the Federal Rules of Civil Procedure, and/or that the purported federal claims be dismissed for failure to state a claim pursuant to Rule 12(b)(6) and 28 U.S.C. § 1915(e)(2) as to all the defendants, and that the court decline

jurisdiction over the remaining state law claims based on 28 U.S.C. § 1367(c)(3), and judgment be entered for all the defendants.

Respectfully submitted this 14th day of August, 2013.

s/Diane K. Vescovo
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE


NOTICE


Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. FED. R. CIV. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.